31182. STAPLETON *v.* AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al.*

DECIDED JULY 10, 1946.

90

*Ringel & Ringel, D. W. Krauss,* for plaintiff.
*Neely, Marshall & Greene,* for defendants.

BROYLES, C. J. (After stating the foregoing facts.) In our opinion, the judge of the superior court did not err in affirming the award of the full board. In *Liberty Mutual Ins. Co.* v. *Blackshear,* 197 *Ga.* 334, 336 (28 S. E. 2d, 860), the court said: "Upon an appeal to the superior court from any final award or other final decision of the Industrial Board, the findings of fact made by the board within its power are, in the absence of fraud, conclusive if they are supported by any competent evidence. Code, § 114-710; *Maryland Casualty Co.* v. *England,* 160 *Ga.* 810, 812 (129 S. E. 75); *London Guarantee Co.* v. *Boynton,* 54 *Ga. App.* 419 (2), 423 (188 S. E. 265); *Ga. Power Co.* v. *Patterson,* 46 *Ga. App.* 7, 8 (166 S. E. 255), and cit.; *United States Fidelity &c. Co.* v. *Price,* 38 *Ga. App.* 346 (144 S. E. 146); *United States Fidelity &c. Co.* v. *Christian,* 35 *Ga. App.* 326 (3) (133 S. E. 639). In such a case not only may an issue of fact arise from contradictory evidence, but contrary implications consistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain an issue of fact despite uncontradicted evidence in regard thereto. *Cooper* v. *Lumbermen's Mutual Casualty Co.,* 179 *Ga.* 256, 261 (175 S. E. 577). In order to render any finding of fact demanded as a matter of law, not only must there be no controversy in the evidence material to the issue involved, but the implications and inferences which logically and properly arise from the evidence must necessarily lead to only the one conclusion." See, to the same effect, *Davis* v. *American Mutual Liability Ins. Co.,* 72 *Ga. App.* 783 (1, 2, 3) (35 S. E. 2d, 203); *American Mutual Liability Ins. Co.* v. *Brackin,* 68 *Ga. App.* 256 (23 S. E. 2d, 505); *Bradberry* v. *Lumbermen's Mut. Cas. Co.,* 60 *Ga. App.* 576 (4 S. E. 2d, 486).

Furthermore, it is well settled law that this court, in reviewing an award by the full board denying compensation, must accept that evidence most favorable to the employer; and if, so viewed, it authorizes an award denying compensation, the award must be affirmed. *Glens Falls Indemnity Co.* v. *Sockwell,* 58 *Ga. App.* 111, 114 (197 S. E. 647); *Merry Brothers Co.* v. *Holmes,* 57 *Ga. App.* 281 (195 S. E. 223). It is also well settled that "in cases of this kind the burden of proof is on the claimant to establish the fact that he has sustained an accidental injury such as is contemplated by the Workmen's Compensation Act. The Industrial Board found

as a fact that this burden had not been carried by the claimant. This finding is binding on all courts when there is evidence in the record to support it." *American Mutual Liability Co.* v. *Harden,* 64 *Ga. App.* 593, 595 (13 S. E. 2d, 685).

The cases cited in behalf of the claimant are distinguished by their facts from this case.

*Judgment affirmed. All the Judges concur, except MacIntyre and Parker, JJ., who dissent.*

MacIntyre, J., dissenting. The single director found "that any injury which claimant sustained May 3, 1944, resulted from a giving away of the right hip; that this weakened condition in his hip existed prior to May 3, 1944, and that the alleged accident of May 3, 1944, in no way or manner aggravated the pre-existing physical condition of claimant;" and found "that the accident was a direct result of a pre-existing physical weakness of claimant's right hip;" and further found that "the evidence is sufficient to authorize a finding that claimant did not stumble or trip over any obstacle or substance of any kind which caused claimant to be thrown backwards against a pile of iron, as alleged; but, on the contrary, the evidence warrants the finding of fact that the accident resulted from the giving away of claimant's hip; that this giving away or weakness of the hip was a pre-existing condition, and that claimant's employment in no way or manner contributed directly or indirectly to the accident."

It seems to me that the finding of the director was that there was an accident which was a direct result of a pre-existing physical weakness of the claimant's right hip. It further seems to me that the director found that the claimant had a pre-existing physical weakness, and that he fell while he was actually engaged in fitting bolts on some hangers in his usual work in his usual way. It should be noted that the director does not find that the fall aggravated a pre-existing disease, and that the aggravation had ceased, thus breaking the connection between the accident and the disease; but he found that the claimant fell upon some iron on the floor and that there was an accident, but that the disease arthritis was the sole cause of it. Irrespective of whether the injury which the claimant sustained on May 3, 1944, resulted from his tripping over an obstacle on the floor, as contended by the claimant, or resulted from the giving way of his right hip, as was found by the director,

and which was a weakened internal condition existing prior to May 3, 1944—the controlling question in issue was whether the accident was due to both the internal condition of the weakened hip and the external condition of the pile of iron on the floor upon which the claimant fell. " 'To constitute an accidental injury, it is not necessary that there should be anything extraordinary occurring in or about the work itself, such as slipping, or falling, or being hit.' " *Hardware Mutual Casualty Co.* v. *Sprayberry,* 195 *Ga.* 393, 396 (24 S. E. 2d, 315) ; *Lumbermen's Mutual Casualty Co.* v. *Griggs,* 190 *Ga.* 277, 284 (9 S. E. 2d, 84). Here the uncontradicted evidence was that the claimant satisfactorily performed his duties as employee in the place of business of his employer, and in the course of his employment; and that while so doing he fell on a pile of iron on the floor, was carried to the company clinic, and was thereafter incapacitated in part or in whole. " 'No doubt the ordinary accident is associated with something external; the bursting of a boiler, or an explosion in a mine, for example. But it may be merely from the man's own miscalculation, such as tripping and falling. Or it may be due both to the internal and external conditions, as if a seaman were to faint in the rigging and tumble into the sea. I think it may also be something going wrong with the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. . . I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. . . If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described. If the state of his health had to be considered, there must be some standard of health, varying, I suppose, with men of different ages.' It was argued there, as it is argued in the present case, that if the act admits of a claim where the employee is diseased, compensation must be allowed in every case where disease kills an employee while he is at work, although the work had nothing to do with the injury or death. The answer to such argument is that to award compensation under the act there must be evidence to show that the employment contributed to the accident; and ultimately the case must turn on whether the disease, standing alone, caused the injury or whether it was caused in part

at least by the work." *Lumbermen's Mutual Casualty Co.* v. *Griggs,* supra. In 4 Schneider's Workmen's Compensation Text (Perm. ed.), 395, it is stated: "The Supreme Court of Georgia follows the English rule that injury in the result rather than accident in the cause constitutes the accident intended under the act. Under this rule an employee may be doing his usual work in his usual way, and if as a result thereof he suffers . . a heat stroke or disabling strain or other unexpected result causing disability, such result constitutes a compensable accident, though he may be suffering at the time from arteriosclerosis, high blood pressure or other predisposing physical infirmities. It is not necessary that something unusual, unforseen, or unexpected occur in the cause in order that the unexpected result may constitute a compensable accident." Cited as authority for this statement are: *Lumbermen's Mutual Casualty Co.* v. *Griggs,* supra, *Hardware Mutual Casualty Co.* v. *Sprayberry,* supra, and *Fidelity & Casualty Co.* v. *Adams, 70 Ga. App.* 297 (28 S. E. 2d, 79).

The statute not having established any standard of health for workmen entitling them to compensation, the employer hires the employee in his present state of health—in common parlance, "as is," strong or weak, sick or well. It seems to me that—even if we concede that the physical structural weakness arose from a pre-existing disease, and that the claimant, while he was actually engaged in fitting bolts on some hangers in his usual work in the usual way in the course of his employment, and as a result thereof suffered an _unexpected result causing disability from both the physical weakness of his leg and the falling on a pile of iron on the floor—such results constitute a compensatory accident, though the claimant may have suffered at the time from arthritis or other predisposed infirmities. Under such circumstances, if the claimant fell upon the iron on the floor and was disabled temporarily or permanently, it would be immaterial that he had a pre-existing physical weakness in the bone of his leg, or even if he had a pre-existing weakness in one of his legs which happened to be an artificial leg. "To make physical perfection a condition for compensation would be well-nigh destructive of both industry and labor." *Lumbermen's Mutual Casualty Co.* v. *Griggs,* supra.

There was not sufficient competent evidence to support the finding of the director and the full board, that the arthritis was the

sole cause of the disability of the claimant, unless the expert opinion of Dr. Wilson to that effect was accepted, which opinion we think was based upon an erroneous and controlling theory. Dr. Wilson's expert opinion seems to have been based upon the hypothesis that the claimant had fallen upon the iron upon the floor, that he was taken to the clinic of the employer, and that the X-ray there taken showed plainly that the claimant had arthritis; that he found no trauma or bruises, and from this he drew the conclusion that the fall on the iron had nothing at all to do with the disability of the claimant; and that the arthritis was the sole cause of the claimant's disability, which, at the time of the hearing, the doctor admitted was permanent. It seems to me that the doctor could have arrived at this opinion or conclusion only on the theory that the claimant would not have fallen if it had not been for the arthritis, which was the sole cause that started or projected the fall which wound up on the iron, and hence the claimant would not have been disabled except for the arthritis, and thus it was the sole contributing cause. Whether such would have been the proper theory in another class of cases, it is not necessary here to say, but it is not a proper theory in a workmen's compensation case where the direct evidence shows that the claimant was working in the course of his employment, although weak from flu, was doing the light work assigned to him in the usual way, in a satisfactory manner, and his hip gave way from a pre-existing disease of arthritis, and he fell upon some iron on the floor and was taken to the clinic on a stretcher in an ambulance. Such a theory by the doctor was not only erroneous but controlling when applied to the cause of the disability in a workmen's compensation case such as is here under consideration, for the correct theory of the Workmen's Compensation Act of Georgia, which should be applied to the case here, is that if, *while the claimant in the course of his employment was doing his usual work in the usual way and an internal cause of arthritis started or projected the fall which resulted in the claimant's contact with the iron on the floor, and both the internal and external conditions caused the disability, the arthritis would not be the sole cause of the disability, even though it would not have occurred except for the arthritis.* There may be more than one contributing proximate cause to an injury. Thus an erroneous legal theory controlled the final conclusion of the

director and the board, for otherwise the evidence would not have supported their findings. In this event, the finding that there was no temporary or permanent compensable disability under the Workmen's Compensation Law should be reversed. *Employers Liability Assurance Corp.* v. *Woodward,* 53 *Ga. App.* 778 (3) (187 S. E. 148); *Williams* v. *Maryland Casualty Co.,* 67 *Ga. App.* 649 (21 S. E. 2d, 478); *Peninsular Life Ins. Co.* v. *Brand,* 57 *Ga. App.* 526 (196 S. E. 264); *Brown* v. *Lumbermen's Mut. Cas. Co.,* 49 *Ga. App.* 99 (174 S. E. 359).

In *Bibb Manufacturing Co.* v. *Alford,* 51 *Ga. App.* 237. (179 S. E. 912), it is stated: That "an injury arising from a physical seizure not induced by or related to the employment is not such an accident as would afford compensation." This statement is not applicable here, in that here there was a causal relationship between the employment and the injury. This case is also differentiated from *Liberty Mutual Ins. Co.* v. *Blackshear,* 197 *Ga.* 334 (supra), in that the decision in that case was controlled by the Code, § 114-404, relating to hernia, whereas this section has no application in the present case.

Irrespective of certain contradictory statements by the plaintiff in giving to the doctor the history of his health record prior to his injury, and the testimony of other witnesses which was at variance with the claimant's statements, I think that, when all of the evidence is considered, it appears undisputed that the claimant, when he fell upon the iron on the floor in his employer's place of business, was working in the course of his employment, and doing his usual work in the usual way, and that his injury was due to an accident arising out of and in the course of his employment.

In my opinion, the judgment should be reversed. I am authorized to state that Parker, J., concurs in this dissent.