31958. UTICA MUTUAL INSURANCE CO. *v.*
WINTERS *et al.*

DECIDED JULY 1, 1948.  REHEARING DENIED JULY 28, 1948.

*Neely, Marshall & Greene,* for plaintiff in error.

*Earl W. Staples, Boykin & Boykin, Wright Lipford,* contra.

MacIntyre, P. J. ■ In Hiestand *v.* Ristau, 135 Neb. 881 (284 N. W. 756), it was held that where a life-insurance company owning a farm sent a man (carpenter) to shingle a barn on the farm, he did not become a farm laborer; and in Peterson *v.* Farmers State Bank, 180 Minn. 40 (230 N. W. 124), where a man (carpenter) was employed by a bank to repair buildings on its farm, it was held that he did not become a farm laborer. In Texas Employers Ins. Asso. *v.* Suttles (Tex. Civ. App.), 57 N. W. 2d, 624, it was held that workers constructing a fish pond on a ranch did not become ranchers.

The term, "farm laborers," as used in Code § 114-107, of the Workmen's Compensation Act, excepting from its operation certain classes of employees means laborers who are employed in or about the business of farming, and the word "farming," in its ordinary sense, signifies a cultivation of land for the production of agricultural crops. *Pridgen* v. *Murphy, 44 Ga. App.* 147 (1) (160 S. E. 701).

A farmer or farm laborer who tills the soil and raises crops would not cease to be such if he did some cleaning out of a well as an incident to farming; and where an employer owns a farm and a garage, and sends one of his garage employees to clean out a well on his farm, a specific task, such garage hand and employee, who does not till the soil, does not become a farm laborer, but retains his general character as a garage employee. Thus we think that from the facts of this case, the garage employee retained his character as a garage employee. He was not

a farm laborer, because he had not been even remotely engaged in tilling the soil or cultivating land for the production of agricultural crops; and we think that, as Winters was directed by the owner of Folds Motor Company to perform the task of digging a well on his farm, he was no more a farm laborer than a mechanic, who had been sent from the garage to repair a farm tractor which had broken down while operating on the farm, would have been a farm laborer. We think that the director was authorized to find that Winters was not engaged in agricultural work and that he was not a farm laborer to whom the act, under Code § 114-107, did not apply.

■ The employer, E. V. Folds, as the sole owner thereof, was engaged in "the automobile business, gasoline business and farming." The automobile business and gasoline business, as we interpret the record, was owned and operated as the Folds Motor Company. The Workmen's Compensation Act does not apply to farm laborers; however, it did apply to the Folds Motor Company, since it employed more than ten employees and was not one of the specifically exempted businesses, and the motor company elected to accept the provisions of the act and took out a compensation insurance policy covering its business. "Section 114-602 declares that 'every employer who accepts the provisions of this title relative to the payment of compensation shall fully insure and keep fully insured . . his liability hereunder' in some insurance company, etc. Section 114-608 declares that 'every policy for the insurance of the compensation herein provided, or against liability therefor . . shall be deemed to be made subject to the provisions of this title.' As a matter of law these provisions became a part of the contract of insurance as if expressly incorporated therein." *Employers Liability Assur. Corp.* v. *Hunter*, 184 *Ga.* 196, 202 (190 S. E. 598).

The director and, on review, the full Board were therefore authorized to find that the motor company was operating under the Workmen's Compensation Act; that the decedent of the claimant had a contract of employment with the motor company; and that, as an employee of the motor company, he was sent by it to clean a well on the motor company's time, for which service he was to receive additional pay. This did not create a new, or another, employment, casual or otherwise. There was

only one contract of employment, which contract was with the motor company, and such a change of work done or compensation paid would not change the relationship existing between the employer and the employee. The cleaning of the well under such circumstances with extra compensation was not a new contract or a different contract, but was merely an extension or enlargement of the contract and of the employment already existing; and such extension or enlargement of the existing contract kept or retained the act of cleaning the well by the decedent of the claimant under the direct order of such employer within the sphere or limits of his one and only contract of employment with the motor company. In other words, the doing of such additional work with extra pay was an incident of the contract of employment with the motor company; for to hold otherwise might in some cases—where the work was distributed among several lines of work—create as many different contracts of employment as there were different lines of work, and, with every new piece of work outside the particular work for which the employee was employed, a new contract would be formed. We think the director was authorized to find that neither the employer nor employee intended the formation of a new contract with each such change—as was revealed in the instant case—in the character of the work directed by the employer to be performed; and where such employee under the circumstances here was killed while acting under the orders of the motor company, his dependents are entitled to compensation.

■ This case is distinguishable from that of *Hardware Mutual Casualty Co.* v. *Collier*, 69 *Ga. App.* 235 (25 S. E. 2d, 136), in that there the case was "dependent on whether, under the facts of [that] case, the cotton-gin business was a business different from the gas and oil business, or whether the subsequent acquisition of the cotton-gin business was only an extension or enlargement of the gas and oil business." Having thus stated at page 240 the question there involved, this court said: "We think they were separate and distinct businesses. It is well established that an employer can not be partially outside of the Workmen's Compensation Act and partially within the act as to the same business."

In that case the employee was employed by the subsequently

acquired business, whereas only the first business—in which he was not employed—was expressly covered by the workmen's compensation insurance policy. On the other hand, in the instant case the employee was employed by the first business which was also the business covered by the insurance policy. Further, in the instant case there is no question involved as to a distinct and separate, after-acquired business; but the only questions are whether the accident arose out of and in the course of Winters' employment with the Folds Motor Company, a single business, and whether at the time of his death he was employed as a farm laborer, which questions have been previously disposed of.

■ The assignments of error not specifically dealt with show no ground for reversal.

■ In view of what has been said in the previous divisions of this opinion, we hold that the award made by the single director, which was approved on review by the State Board of Workmen's Compensation, was authorized by the evidence; and the superior court did not err for any reason assigned in affirming such award in favor of the applicant for compensation.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*